**JACKSONWHITE**
**ATTORNEYS AT LAW**
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona  85201
T: (480) 464-1111 F: (480) 464-5692
Attorneys for Movant BMO Harris Bank, NA
By:     Kelly G. Black, No. 016376, kblack@jacksonwhitelaw.com
           centraldocket@jacksonwhitelaw.com

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | No. 2:12-bk-15814-SSC |
| RONALD LEE BURKE AND BONITA FAY BURKE, | **Chapter 11 Proceedings** |
| Debtors. | **Objection to Confirmation of Chapter 11 Plan** |
| | Assigned to:  Honorable Sarah Sharer Curley |

BMO Harris Bank, NA ("BMO") objects to confirmation of the Debtors' First Plan of Reorganization (not separately filed; attached as Exhibit A to Disclosure Statement, Doc 67), and to the Supplement to Debtors' First Plan of Reorganization (Doc 100) on the following grounds:

1.  BMO holds an allowed secured claim against property of the estate in the amount of $312,562.88 through January 23, 2013.  The claim will be increased in the amount of attorney fees accruing after January 23, 2013. *In re Warkentin*, 461 B.R. 636 (Bkrtcy. D. Or. 2011).

2.  BMO has exercised its election under Section 1111(b) of the Bankruptcy Code.

3.  Debtors placed BMO's claim in Class 2-E of its Plan and Supplement.

4.  Debtors' Plan and Supplement proposes the following treatment of BMO's claim:

    a.  If BMO withdraws its 1111(b) election, a $123,320.86 secured claim will be paid at 4% interest in monthly payments computed on a 30-year amortization, with a 10-year balloon payment. This works out to 119 monthly payments of $588.75 each and a balloon payment in month 120 in the amount of $97,746.27;

b. If BMO does not withdraw its 1111(b) election, BMO will receive the same monthly payments until the sum of payments equals BMO's total allowed claim. This works out to 530 monthly payments of $588.75 each and a final payment in month 531 of $525.38 – a plan duration of at least 44 years and 3 months.

5. *Feasibility.* Section 1129(a)(11) requires feasibility: proof that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor … ." The Plan is not feasible.

    a. *Age and Continued Capacity.* Upon information and belief, Debtor Ronald Lee Burke is in his 60s and Debtor Bonita Fay Burke is in her 50s. The Plan provides for a term of more than 44 years for BMO's claim, and of 30 years for other secured creditors, extending beyond the life expectancy of either of them. Debtors are not likely to live long enough to perform the Plan, and are not likely to have the physical and mental capacity to perform the plan during their entire lives.

    b. *Earnings.* Debtors' schedules do not reveal income sufficient to make the payments provided for by the Plan. Without explanation, the updated information provided in the Disclosure Statement asserts an additional $2,605 in income. The information provided does not allow a finding that Debtors are able to rely—for over 44 years—on a 54% increase over the income they had just nine months ago.

    c. *Nondischargeable Claim.* Debtors are judgment debtors under a judgment totaling approximately $2 million, with interest. If successful, the judgment creditors will be able to execute against all of Debtors' assets and against their non-exempt income, taking all of their disposable income and making the Plan infeasible.

    d. *Administrative and Priority Claims.* Debtors have not established their ability to satisfy administrative and priority claims, certainly not without jeopardizing their ability to satisfy their obligations to BMO and other creditors.

6. *Post-Petition Income.* In violation of Sections 1129(a)(1) and 1123(a)(8), Debtors do not propose to contribute all of their post-petition disposable income to the Plan.

7. *Absence of Good Faith*. In violation of Section 1129(a)(3), the Plan was not proposed in good faith, as indicated by the following:

    a. *Retention of Loss-Producing Property*. According to the Disclosure Statement, the properties against which BMO and Bank of New York have liens are producing either $500 or $1,500 in income, but are generating $2,005.71 in expenses each month, *even after* restructuring the three mortgages on the on the property. Proposing a plan in which Debtors retain a property with a projected $500 negative cash flow is not in good faith. Debtors would be able to pay more to their creditors by abandoning the property and eliminating the monthly deficit.

    b. *Liquidation Analysis*. In Debtors' schedules and Disclosure Statement, significant are assets valued as "unknown," including Debtors' inventory of trees, from which they allege they are making income. The failure to make an estimate of value indicates a lack of good faith in determining the liquidation value of their assets.

    c. *Projected Disposable Income*. While Debtors offer updates to their schedules I and J, they offer no calculation of their *projected* disposable income at the time of confirmation, relying instead solely on the backward-looking computation prepared at the time of filing.

8. *Inadequate Payment Stream*. In violation of Section 1129(a)(7) and (b)(2)(a)(II), the Plan does not provide BMO with a stream of payments with a present value equal to the value of the property.

    a. *Valuation*. Debtors' sole basis for valuation is now seven months old, and the real estate market has since risen. BMO objects that the Plan does not properly value the property given as collateral for its debt.

    b. *Interest Rate*. BMO objects that the 4% interest rate proposed by the Debtors is insufficient to account for the likelihood that Debtors will default. As mentioned above, the Plan payments extend beyond the Debtors' expected life span, and their ability to make the payment depends on their ability to make—for that entire

period—income that is 54% higher than it was just nine months ago. BMO contends that a proper risk factor for this property would result in an interest rate exceeding 6%.

9. In violation of Section 1129(b)(1), the Plan discriminate unfairly and is not fair and equitable, as it provides BMO with payments extending over 44 years, while satisfying other secured claimants within 30 years. Were Debtors to cure this by proposing payments within the same 30 years, it would render the plan infeasible as exceeding their projected disposable income.

10. *Lien*. In violation of Section 1129(b), the Plan is not fair and equitable, as it does not provide that BMO will retain its lien until satisfaction of its allowed secured claim unless (and then only by implication) BMO withdraws its 1111(b) election.

11. *Modification and Default*. The Plan should expressly incorporate all provisions of Debtors' obligations with BMO which are not expressly modified by Section IV.B.5 of the Plan, and that default under any the Plan with respect to BMO's claim will authorize all remedies available under the provisions of Debtors' obligations with BMO.

DATED this 5th day of March, 2013.

JACKSON WHITE, P.C.

/s/ Kelly G. Black
Attorneys for Movant BMO Harris Bank, NA
By: Kelly G. Black, No. 016376

20997-1333\610361.docm